W. A. IRELAND AND LORRENE B. IRELAND, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73412. Filed July 31, 1959.

*Charles M. Bump, Esq.*, for the petitioners.
*Emory L. Langdon, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined a deficiency in the petitioners' income tax for the year 1955 in the amount of $4,202.09. In an amendment to his answer the respondent claimed an increase in the income tax deficiency in the amount $79.44. Petitioners do not contest this increased portion of the deficiency. The issue is whether the petitioners made a timely election to report the gain from the sale of a roller skating rink in 1955 on the installment basis.

### FINDINGS OF FACT.

Some of the facts have been stipulated and they are hereby incorporated by this reference.

W. A. Ireland and his wife, Lorrene, were residents of Polk County, Iowa, during the years 1954, 1955, and 1956. They filed joint income tax returns for the years 1955 and 1956 with the district director of internal revenue at Des Moines, Iowa. W. A. Ireland will hereinafter be called the petitioner.

From January 1954 to August 4, 1955, petitioner owned and operated a roller skating rink in Ankeny, Iowa. On August 4, 1955, the petitioner entered into a written contract to sell the rink to Harold E. Rowland and Doris B. Rowland for a total consideration of $74,000. The following schedule shows the gain realized on the sale:

| | Date acquired | Date sold | Selling price | Depreciation claimed and allowed | Cost | Gain |
|---|---|---|---|---|---|---|
| Land | July 28, 1953 | Aug. 4, 1955 | $3,000.00 | 0 | $2,500.00 | $500.00 |
| Building | Dec. 1953 | Aug. 4, 1955 | 63,285.28 | $2,187.82 | 29,381.15 | 36,691.95 |
| Organ and sound | Dec. 1953 | Aug. 4, 1955 | 3,000.00 | 579.30 | 2,760.12 | 819.18 |
| Tools and equipment | Dec. 1953 | Aug. 4, 1955 | 1,000.00 | 145.74 | 920.51 | 225.23 |
| Skates | Dec. 1953 | Aug. 4, 1955 | 3,500.00 | 1,020.22 | 2,577.56 | 1,942.66 |
| | | | | | | 39,579.02 |

A portion of the total consideration in the amount of $214.72 was for the sale of minor inventory items.

The purchasers paid to the petitioner the amount of $15,000 upon the execution of the written contract and went into possession of the rink on August 5, 1955. The sales contract called for additional payments on November 30, 1955, and February 28, 1956, in the amounts of $4,000 and $6,000, respectively. The purchasers made these additional payments to the petitioner in the amounts of $4,000 and $6,000 on January 20, 1956, and March 23, 1956, respectively. A warranty deed dated February 29, 1956, was executed by petitioner and delivered to the purchasers on March 23, 1956, in performance of the provisions under the sales contract. Concurrently with the delivery of the warranty deed the purchasers executed two real estate mortgages to petitioner and his wife, a first mortgage in the amount of $30,000 and a second mortgage in the amount of $19,000. Each mortgage secured a promissory note payable semiannually on installments due March 1 and September 1 of each year.

Petitioner's income tax returns for the years prior to 1955 were prepared by Albert Miller and Wilbur Miller, who were vice president and cashier, respectively, of the Polk City Savings Bank. Petitioner's return for 1955 was prepared by Wilbur Miller. Petitioner inquired about the proper way to report the sale of his rink in 1955 and he was advised by Wilbur that he did not have to report the sale in his 1955 return and that the petitioner would not have to report anything until his original cost had been recovered. Petitioner's original return for 1955 did not report the sale or show it in any way, and the return did not include any payments received by the petitioner from the sale in 1955.

Prior to April 1957 the petitioner consulted Charles M. Bump, the attorney in this case, concerning the preparation of the 1956 joint income tax return. In this joint return, prepared by the attorney, the petitioner reported the payments received from the rink purchaser in 1956 on the installment basis and included only a portion of the payments as gain realized in 1956 from the sale. On the advice of the attorney the petitioner also filed amended joint returns for the years 1955 and 1956 on June 10, 1957, and May 29, 1957, respectively, and on the amended 1955 joint return the petitioner reported the sale of the rink on the installment basis and included in income only a portion of the payments received from the purchaser in 1955 as gains realized in that year from the sale. Respondent includes the entire gain from the sale in the petitioner's income for 1955, with this explanation:

Since you failed to report the sale of the roller rink in your original 1955 return, an election to report the sale and gain derived therefrom on the install-

ment basis, in an amended return filed after the due date thereof, is not a timely election and the gain must be reported in full. * * *

OPINION.

The controversy here is whether the petitioner, in an amended return for the year 1955 filed by him on June 10, 1957, may elect to report on the installment basis the gain realized from a sale in 1955 of a skating rink. It is conceded by respondent that this particular sale, except for the lateness of the election, comes within the provisions of section 453 of the Internal Revenue Code of 1954.[1] This section carries into the Internal Revenue Code of 1954 the provisions of section 44 of the Internal Revenue Code of 1939 substantially unchanged. Both sections, the new and the old, make it clear that a taxpayer who makes a qualifying sale "may" elect to report his income from such sale on the installment basis. We think, therefore, that the Court decisions interpreting the language in section 44 of the Internal Revenue Code of 1939 apply with equal force here.

Petitioner argues that there was no regulation in effect in 1955 *requiring* a taxpayer to make a timely election under section 453 of the Internal Revenue Code of 1954 if he desired to obtain its benefits. Final regulations under section 453 of the Internal Revenue Code of 1954 were adopted in September 1958 by T.D. 6314. 1958-2 C.B. 160. For the most part the regulations were made retroactive, with some exceptions. It was explicitly provided that section 1.453-8 of these regulations could not have retroactive effect. This nonretroactive section provides that "[a] taxpayer who adopts the installment method of accounting in the first taxable year in which he makes installment sales must indicate in his income tax return for that taxable year that the installment method of accounting is being adopted." This does not mean there was no regulation in force in 1955, for section 7807, I.R.C. 1954, makes the regulation promulgated under section 44, I.R.C. 1939, or Regs. 118, section 39.44-3, applicable during the period before the effective date of T.D. 6314. That regulation merely used the statutory language to the effect that a taxpayer who makes a qualifying sale "may" elect to report his income from such sale on an installment basis.

---

[1] SEC. 453. INSTALLMENT METHOD.

(a) DEALERS IN PERSONAL PROPERTY.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

(b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY.—

(1) GENERAL RULE.—Income from—

(A) a sale or other disposition of real property, * * *

* * * * * *

may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a).

The above history of the regulations, however, does not help the petitioner, because our decision here turns not so much on the wording of the nonretroactive regulation as it does on the express wording of section 453 itself, which, of course, was in effect in the year before us. As we have already pointed out, the use of identical wording in section 453 of the Internal Revenue Code of 1954 and section 44 of the Internal Revenue Code of 1939 makes it obvious that we must take into consideration the existing Court decisions.

This Court has held consistently that a taxpayer must make a timely election in order to obtain the benefits of the installment basis provisions. In *Sarah Briarly*, 29 B.T.A. 256, the taxpayer realized income in 1928 from the sale of real estate. No income tax return was filed by the taxpayer for 1928, and the collector, in 1931, prepared a return for 1928 and included in taxpayer's income the entire gain from the sale in that year. The taxpayer argued that she was entitled to report her gain from the sale on the installment basis. This Court rejected the taxpayer's contention and said:

> Where benefits are sought by taxpayers, meticulous compliance with all named conditions is required. *Lucas* v. *Pilliod Lumber Co.*, 281 U.S. 245. The statute here involved provides that in the case of an installment sale of real estate "the income may * * * be returned" on the installment basis. This, in our opinion, requires both timely and affirmative action on the part of those seeking to take advantage of the benefits conferred by the statute. * * *

In *W. T. Thrift, Sr.*, 15 T.C. 366, the taxpayer sold 24 lots in 1946, and on his income tax return for that year reported only the gain realized from 3 of the sales. No reference whatever was made in the 1946 return to the other 21 sales. At the trial the taxpayer sought to claim the benefits of section 44 of the Internal Revenue Code of 1939 as to the 21 lots. This Court said:

> Nor may the petitioners now claim that they are entitled to the benefits of section 44. The opinion of this Court in *Sarah Briarly*, 29 B.T.A. 256, is expressive of the established rule, wherein it states that when benefits are sought by taxpayers, meticulous compliance with all the named conditions of the statute is required, and that in the case of section 44, timely and affirmative action is required on the part of those seeking the advantages of reporting upon the installment basis. We feel that it is now too late for the petitioners to claim the benefits of section 44. Cf. *Morgan Rundel*, 21 B.T.A. 1019; *Liberty Realty Corp.*, 26 B.T.A. 1119; *Sylvia S. Strauss*, 33 B.T.A. 855, affd., 87 Fed. (2d) 1018; *Pacific Nat. Co.* v. *Welch*, 304 U.S. 191; *United States* v. *Kaplan*, 304 U.S. 195.

To the same effect are *Albert Vischia*, 26 T.C. 1027; *John W. Commons*, 20 T.C. 900; *Cedar Valley Distillery, Inc.*, 16 T.C. 870. The last cited case is particularly in point for there, as here, taxpayer sought the benefit of installment reporting of gain from a sale by filing an amended return. Since the taxpayer's original return had not reported any gain or any income from the sale we held: "The

election to use an installment basis under the circumstances of this case was not timely."

Petitioner cites two cases, *United States* v. *Eversman*, 133 F. 2d 261, and *Scales* v. *Commissioner*, 211 F. 2d 133, reversing 18 T.C. 1263, both decided by the Court of Appeals for the Sixth Circuit, as authority for the proposition that a taxpayer need not make a timely election in order to claim the benefits of the installment sales provisions. The facts in those cases were different from the facts in the present case and, indeed, were rather unusual. The Court of Appeals for the Ninth Circuit in *Jacobs* v. *Commissioner*, 224 F. 2d 412, affirming 21 T.C. 165, said that the *Eversman* case was distinguishable and if the *Scales* case was not distinguishable "we are not in agreement." If the facts in the two cases are not distinguishable from the present facts, then, with all due respect to the Court of Appeals for the Sixth Circuit, this Court, like the Ninth Circuit, is not in agreement with those decisions and will not follow them in the present case.

*Decision will be entered under Rule 50.*