Joseph Hornberger, Jr., and wife, Rose Hornberger v. Commissioner. Robert E. Hornberger and wife, Dorothy A. Hornberger v. Commissioner.
Hornberger v. Commissioner
Docket Nos. 66407, 66408.
United States Tax Court
T.C. Memo 1960-43; 1960 Tax Ct. Memo LEXIS 248; 19 T.C.M. (CCH) 219; T.C.M. (RIA) 60043; March 18, 1960
Clarence E. Kendall, Esq., Bank of the Southwest Building, Houston, Tex., for the petitioners. Carswell H. Cobb, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: Respondent determined deficiencies in 1953 income tax of the respective petitioners as follows: Docket
No.
Petitioner
Deficiency
66407
Joseph Hornberger, Jr.,
and wife, Rose Horn-
berger
$143,911.21
66408
Robert E. Hornberger
and wife, Dorothy A.
Hornberger
139,911.78 The total amounts are not in issue, certain minor adjustments having been conceded. The sole question is *249 whether petitioners may have the benefit of reporting the proceeds of a sale of real property on the installment basis where no reference thereto was made in their respective returns. All of the facts were stipulated. They are found accordingly. Joseph and Robert Hornberger, hereafter called petitioners, are brothers. "By gifts from their father and uncle each of [them] acquired an undivided one-half interest in * * * land * * *, hereinafter called the 'Flanders property'. At all times material to this proceeding each of the petitioners owned his respective one-half interest in the Flanders property for more than six months and each of the petitioners' basis in his interest in said property was $40 per acre, or a total of $21,992 for his undivided one-half interest. "4. On November 18, 1953 petitioners sold their interest in the Flanders property to Hornberger Brothers Properties, Inc., a corporation organized under the laws of the State of Texas of which each of the petitioners owned 37 1/2% of the capital stock, or a total of 75% thereof. The total purchase price to the corporation of * * * the Flanders property was $1,099,600, being $1,000 an acre for 1,099.6 acres. Of *250 the purchase price $7,500 was paid in cash and each of the petitioners received $3,750 as his one-half thereof. The remaining portion of the purchase price was evidenced by two identical 3% interest bearing promissory notes, each in the principal amount of $546,050. One of such notes was payable to Joseph Hornberger, Jr., and the other was payable to Robert E. Hornberger. Each note was payable in installments on or before 13 years from date. The fair market value of each note was approximately its face value. No payments were made on either note during the year 1953 and both of said notes are now only partially repaid. "5. Prior to the sale of the Flanders property to the corporation, petitioners consulted with counsel as to whether income tax could be deferred, with respect to that part of the sales price represented by the corporation's notes, until such time as payments were made on such notes. Counsel advised petitioners that the gain from the sale could be reported on the installment basis as provided in Section 44(b) of the Internal Revenue Code of 1939. Based upon such advice, petitioners made the sale of the Flanders property to the corporation. Petitioner Joseph Hornberger *251 and wife employed a firm of certified public accountants to prepare their tax return for the year 1953 and such firm was directed to treat the gain on sale of Joseph Hornberger, Jr.'s interest in the Flanders property on the installment basis. Due to an error by the accounting firm, their return did not comply with rules set forth in the Respondent's Regulations for electing the installment method of reporting gain from the sale of realty. Petitioner Robert E. Hornberger discussed with his brother, Joseph, the manner in which the sale had been treated by the accountants in the preparation of latter's return and, based upon such treatment by the accountants, petitioner Robert E. Hornberger and wife also filed their return in the same manner. [Stipulation.]" Respondent determined that the entire gain was taxable in 1953. Petitioners seek the benefit of the installment sales provisions covering a sale of realty [1] although apparently no reference to the sale was made in their returns. A number of cases dealing with generally similar problems are referred to by the parties. Some seem to us sufficiently different to present possible grounds of distinction. *252 Sarah Briarly, 29 B.T.A. 256, and Cedar Valley Distillery, Inc., 16 T.C. 870, presented, as petitioners suggest, situations where no returns whatever were filed for the critical years. These cases might seem more favorable to the taxpayers than the present one as indicating that there, there was an absence of any intention to elect. In Scales v. Commissioner, (C.A. 6) 211 F. 2d 133, reversing 18 T.C. 1263, the transaction was originally reported as a lease. In United States v. Eversman, (C.A. 6) 133 F. 2d 261, and Boca Ratone Co. v. Commissioner, (C.A. 3) 86 F. 2d 9, reversing 31 B.T.A. 1060, the sales were offset by repossessions and the obligation satisfied by a return of the property. But in W. T. Thrift, Sr., 15 T.C. 366, and particularly in W. A. Ireland, 32 T.C. 994, as here, the taxpayer filed a return in which no reference was made to the sale in question. In the Ireland case, the omission was due to erroneous advice that profit from the transaction need not be returned until basis had been recovered. Here, the omission was likewise due to the mistake of *253 an accountant who prepared the return. At least, that is the stipulated explanation. In the Ireland case we said (pp. 996, 998): "It is conceded by respondent that this particular sale, except for the lateness of the election, comes within the provisions of section 453 of the Internal Revenue Code of 1954. * * * This section carries into the Internal Revenue Code of 1954 the provisions of section 44 of the Internal Revenue Code of 1939 substantially unchanged. Both sections, the new and the old, make it clear that a taxpayer who makes a qualifying sale 'may' elect to report his income from such sale on the installment basis. We think, therefore, that the Court decisions interpreting the language in section 44 of the Internal Revenue Code of 1939 apply with equal force here. "Petitioner cites two cases, United States v. Eversman, 133 F. 2d 261, and Scales v. Commissioner, 211 F.2d 133, reversing 18 T.C. 1263, both decided by the Court of Appeals for the Sixth Circuit, as authority for the proposition that a taxpayer need not make a timely election in order to claim the benefits of the installment sales provisions. The *254 facts in those cases were different from the facts in the present case and, indeed, were rather unusual. The Court of Appeals for the Ninth Circuit in Jacobs v. Commissioner, 224 F. 2d 412, affirming 21 T.C. 165, said that the Eversman case was distinguishable and if the Scales case was not distinguishable 'we are not in agreement.' If the facts in the two cases are not distinguished from the present facts, then, with all due respect to the Court of Appeals for the Sixth Circuit, this Court, like the Ninth Circuit, is not in agreement with those decisions and will not follow them in the present case." We reach the same conclusion here. The statute specifically provides that a taxpayer "may" "report" income on the installment basis. He is not required to do so, and we have treated the language as conferring a right of election [2] on the taxpayer. W. A. Ireland, supra.Petitioners here did not elect to do so. Petitioners' attempt to regard the accountant as a "third party" seems to us fruitless. He was their agent, and his act was their act. If a forum exists for correction of any error, it does not lie with the taxing authorities. *255 Decision will be entered for the respondent. Footnotes
1. I.R.C. 1939. SEC. 44. INSTALLMENT BASIS. (b) Sales of Realty and Casual Sales of Personality. - In the case * * * (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 30 per centum of the selling price (or, in case the sale or other disposition was in a taxable year begining prior to January 1, 1934, the percentage of the selling price prescribed in the law applicable to such year), the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section As used in this section the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.↩
2. Although petitioners contend on brief that the regulations in effect prior to 1958 did not require an election, the stipulation reads: "Due to an error by the accounting firm, their return did not comply with the rules set forth in the Respondent's Regulations for electing the installment method * * *." (Italics added.)↩