ALBERT VISCHIA AND ROSE VISCHIA, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54185. Filed September 12, 1956.

*Leo M. Rogers, Esq.*, for the petitioners.
*William F. Fallon, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* Respondent has determined a deficiency in the Federal income tax of the petitioners for the taxable year 1950 in the amount of $13,340.28. The sole remaining issue is whether respondent erred in refusing to permit petitioners to elect to report on the installment basis the gain from a sale of real property in 1950.

The facts have all been stipulated, and the stipulation is incorporated herein as our findings.

Petitioners are husband and wife, and reside in Clifton, New Jersey. Their joint Federal income tax return for the taxable year 1950 was

filed with the then collector of internal revenue for the fifth district of New Jersey at Newark, New Jersey.

In January 1941, petitioner Albert Vischia (hereinafter called Albert) purchased the land and building at 188–194 21st Avenue (hereinafter called the realty), Paterson, New Jersey, for use in his winery business. Prior to July 1949, that business was operated as a sole proprietorship. In July of 1949 it was incorporated under the laws of the State of New Jersey under the name Sonoma Vineyards Winery, Inc. (hereinafter called the corporation). The realty was not at that time transferred to the corporation.

On December 29, 1950, Albert transferred the realty to the corporation for a total consideration of $90,000. Of that sum, $5,500 was payable in cash, $80,000 was in the form of a purchase money mortgage, and $4,500 in the form of an assumption by the corporation of an existing mortgage on the realty in that amount.

The adjusted basis of the realty in Albert's hands at the time of the foregoing sale was $15,550.95. On their joint Federal income tax return for 1950 petitioners reported the gain from the sale as a long-term capital gain in the amount of $74,449.05. Fifty per cent thereof, or $37,224.53, was taken into account and reported as income.

During the taxable year 1950 petitioners also realized a net profit from rentals in the amount of $8,448.43. They had erroneously reported $8,640.06 as the amount thereof on their return for that year. An additional depreciation allowance in the amount of $191.63 determined by the respondent and uncontested by the petitioners accounts for this difference in amount between correct net rental income and the amount reported.

In computing a net operating loss deduction on their return for 1950, petitioners erroneously failed to make the adjustment with respect to long-term capital gain required by section 122 (d) (4) of the Internal Revenue Code of 1939. Respondent made such adjustment in his determination, and his action in so doing is no longer contested by petitioners. The aggregate carryovers and carrybacks from other years available as a deduction in the taxable year 1950 is in the amount of $33,324.39.

Subsequent to the filing of their 1950 return, petitioners requested permission to change their basis for computing gain on the sale of realty from that reported on the return to the installment basis. Respondent denied permission for such change on the ground that an election had been made at the time petitioners filed their return, and that such election is not subject to later change. Petitioners are now in agreement with all adjustments made by respondent in his determination of a deficiency for the taxable year 1950, except his denial of this request.

Section 44 [1] of the Internal Revenue Code of 1939 provides an election whereby a taxpayer in certain cases is permitted to report gains from sales in installments over a period of more than 1 taxable year. That provision is permissive, not mandatory. It gives to the taxpayer who can bring himself within its terms the right, but not the duty, to report his gain or gains in the manner therein set forth. *Sarah Briarly*, 29 B. T. A. 256.

Respondent has determined that petitioners, by treating the 1950 sale as a closed transaction on their return for that year, have elected not to treat their gain in accordance with section 44, and cannot now reverse their earlier choice. Petitioners, on the other hand, claim that they so reported their transactions on their 1950 return as to show a loss rather than a gain as a result of the sale of the realty in that year, and hence made no election with respect to the method of reporting the gain which they now concede to have been realized. Therefore, having made no election, they contend that they should now be permitted to elect to report their gain on the installment basis. We find petitioners' position to be without merit.

Petitioners did elect to report gain from the sale of realty other than on the installment basis. Their return shows not a loss, but a gain from that sale. They first applied the claimed net operating loss deduction in the amount of $37,596.08 to their net profit "from business" before such deduction in the amount of $8,640.06, resulting in a net loss shown on their "SCHEDULE C.—PROFIT (OR LOSS) FROM BUSINESS OR PROFESSION" in the amount of $28,956.02. On the other hand, their "SCHEDULE D.—GAINS AND LOSSES FROM SALES OR EXCHANGES OF PROPERTY" shows a net gain for 1950 in the amount of $37,224.53, representing 50 per cent of the net capital gain in the amount of $74,449.05 resulting from the sale of the realty. And the return shows net income of $8,268.51, the result of subtracting the claimed net business loss of $28,956.02 from the foregoing net gain in the amount of $37,224.53.

Thus, the 1950 return filed by petitioners fails to support their contention that they reported no gain from the sale of the realty; they in fact reported gain from that transaction alone; had no such gain

---

[1] SEC. 44. INSTALLMENT BASIS.

(a) DEALERS IN PERSONAL PROPERTY.—Under regulations prescribed by the Commissioner with the approval of the Secretary, * * * [an installment dealer] may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price.

(b) SALES OF REALTY * * *.—In the case * * * (2) of a sale or other disposition of real property, if * * * the initial payments do not exceed 30 per centum of the selling price * * *, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. As used in this section the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

been reported there would have been no net income, but rather a net loss shown on the 1950 return. True, the amount of such gain as reported was minimized because of an error now conceded by the petitioners, but nevertheless gain was reported and the transaction treated as closed. *Sylvia S. Strauss*, 33 B. T. A. 855, affirmed 87 F. 2d 1018 (C. A. 2), is virtually indistinguishable in this respect. Cf. *Liberty Realty Corporation*, 26 B. T. A. 1119. See also *Sarah Briarly*, *supra*, at p. 259, to the effect that the election to report gain on the installment basis requires "timely and affirmative action," so as to preclude such election after the date for filing a timely return where a taxpayer failed to make such election, even in the absence of an affirmative election to report the gain in another manner. *John W. Commons*, 20 T. C. 900, 903; *Cedar Valley Distillery, Inc.*, 16 T. C. 870, 882; *W. T. Thrift, Sr.*, 15 T. C. 366, 373. Petitioners did in fact elect not to report their gain on the installment basis, and they are now barred by such election. Any possible doubts in this regard must be deemed to have been resolved against them by *Pacific National Co.* v. *Welch*, 304 U. S. 191.

*Decision will be entered for the respondent.*